```
                                    )
TATIANA HENRY,                      )
                                    )
          Plaintiff,                )
                                    )
     v.                             )    Civil Action No.
                                    )    15-12351-NMG
STERLING COLLISION CENTERS INC.,    )
                                    )
          Defendant.                )
                                    )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves allegations of race-based employment discrimination. Plaintiff Tatiana Henry ("Henry" or "plaintiff") claims that defendant Sterling Collision Centers, Inc. d/b/a Sterling Autobody Centers ("Sterling" or "defendant") 1) discriminated against her, 2) harassed her and 3) fired her in retaliation for reporting the discrimination all in violation of the Massachusetts Anti-Discrimination Statute, M.G.L. c. 151B ("Chapter 151B"). Sterling's motion for summary judgment is currently pending before the Court. For the reasons that follow, that motion will be, with respect to defendant's request that damages for lost wages be limited to the period before October 23, 2014, allowed but otherwise denied.

## I.  Background:

### A. The Parties

Henry, a woman of African descent who was born in Haiti, currently resides in Sudbury, Massachusetts.  Until mid-2014, Sterling operated auto body stores across the United States and was headquartered in Natick, Massachusetts.  At that time, Sterling became a wholly owned subsidiary of Service King Paint & Body, LLC ("Service King").  Both Sterling and Service King are incorporated under the laws of Delaware and have principal places of business in Richardson, Texas.

Henry first started working at Sterling as an accounts payable coordinator in October, 2007.  She had no issues with discrimination or harassment during her first stint at Sterling and she left in May, 2011 of her own accord because she was moving out of the state.

In April, 2013, Henry returned to Massachusetts and was re-hired by defendant to work as an accounts payable coordinator. When she returned to Sterling, Henry was the only black woman on a team of six to seven employees.  Her direct supervisor was Deborah McGaughey, who reported to Guy Block.  Gavin Fiske was Henry's co-worker.

During Henry's employment, Sterling had two policies that barred discrimination, harassment and retaliation: 1) its Equal Opportunity Policy and 2) its Freedom from Harassment / Respect

in the Workplace Policy.  Although Sterling convened a meeting about those policies each year, according to Henry, Mr. Block, who led the meetings, always mocked the policies.

### B. The Group Text Message Incident

The first incident that plaintiff reported to Sterling's Human Resources Department ("HR") involved a group text message. In December, 2013, Mr. Fiske sent a text message to coworkers, including Mr. Block and plaintiff, that involved a picture of another co-worker dressed as a character from the movie <u>Star Wars</u>.  Plaintiff responded by texting "[oh my god] is that really her?" and "are you cyber stalking the [coworker]." Another person in the group text asked Mr. Fiske if he was "BFF", which means "Best Friends Forever", with the coworker. Then a different individual asked if "BFF" stands for "big f****** friend".  At that point, plaintiff texted the group that she was laughing and that "it's Sunday be [holy]".  In February or March of 2014, plaintiff reported the group text messages to Sterling's Assistant Vice President of HR, Cary Varn.

### C. The Racially Offensive Comments

At that time, plaintiff also reported to HR that Mr. Block had been making racially offensive comments.  The parties agree that Mr. Block made the following comments in plaintiff's presence: 1) when she was eating chicken, he asked if it was fried chicken and if she was drinking Kool-Aid, 2) he stated

that he was taking Martin Luther King Day off to have fried chicken and "celebrate with black people", 3) he asked Mr. Fiske if a bottle of hot sauce was for plaintiff and 4) on multiple occasions he said that she looked like the African American singer Macy Gray, especially with respect to her curly hair, and that her hair meant she was "really falling into [her] culture".

Plaintiff asserts that Mr. Block's comments about fried chicken, Kool-Aid and Macy Gray were specifically directed toward her, while defendant states that they were simply made in her presence.  The parties also disagree about how often the comments occurred.  According to plaintiff, Mr. Block made the comments about fried chicken, Kool-Aid and Macy Gray at least once a week in January and February of 2014, while defendant contends that the fried chicken and Kool-Aid comment was made on only one occasion.

Mr. Fiske, plaintiff's coworker, also asked her if she liked, wanted or drank Kool-Aid about 10 to 15 times between April, 2013 and February, 2014.  It is undisputed, however, that plaintiff did not report Mr. Fiske's comments to HR.  Plaintiff submits that her supervisors witnessed Mr. Fiske's Kool-Aid comments and laughed about them.

### D. The Investigation of the Text Messages and Comments

The parties offer differing versions of what happened after plaintiff reported the text messages and comments to HR.

Defendant submits that Ms. Varn and the Senior Human Resources
Manager, Mike Nuxoll, promptly investigated plaintiff's claims
and, in March, 2014, interviewed plaintiff over the phone.
During the interview, Ms. Varn and Mr. Nuxoll discussed the text
messages and Mr. Block's comments and said that they would speak
to him.  Defendant also asserts that they inquired about whether
plaintiff thought her co-workers retaliated against her for
reporting the text messages by not treating her to a birthday
lunch.  They further asked about co-worker reports that
plaintiff talked to herself and drank alcohol at work.
Plaintiff vigorously denies that she did either of those things.

Defendant contends that Ms. Varn and Mr. Nuxoll also
interviewed Mr. Block and the other employees involved in the
text messages and set up a meeting with plaintiff and Mr. Block
after the interviews.  In that meeting, Ms. Varn purportedly
asked if plaintiff was comfortable with the work environment.
Plaintiff stated that she was "fine as long as the harassment
doesn't continue".  Mr. Block apologized and said he did not
think of plaintiff as black and did not think that she was
offended by the comments.  After Mr. Block left the meeting, Ms.
Varn thanked plaintiff for reporting the issues and said that
Mr. Block would receive a verbal warning.  Defendant states that
it issued verbal warnings to all employees involved, although

plaintiff contends that she never received a warning for
participating in the text messages.

Plaintiff asserts, and, for the purpose of summary
judgment, defendant does not dispute, that after the HR
investigation, Mr. Block commented in her presence that he was
not permitted to make statements about fried chicken, Kool-Aid
or hair on 10 to 15 separate occasions. Plaintiff states that
the comments were hostile and made her uncomfortable but
defendant points out that plaintiff did not report the comments
to HR because she "didn't think it was harassment". Plaintiff
explains that she did not report the comments because she did
not think that HR could help her, the comments were not directed
specifically to her and she felt that it would make things
worse. She states that she was worried about losing her job and
that her supervisor, Ms. McGaughey, laughed about the comments.

### E. Plaintiff's Termination

In mid-March, plaintiff had her 2013 performance review.
Ms. McGaughey rated her "successful" which is the median of
Sterling's five employee ratings. Plaintiff claims that she
heard Ms. McGaughey say that she was lucky that the review
occurred before she complained to HR because if it had been
after the complaints it would have been a negative review. How
much Ms. McGaughey knew about plaintiff's complaints to HR is
disputed. Defendant claims that Ms. McGaughey was aware of the

complaint about the text messages but not the complaint about
Mr. Block's comments.  Plaintiff contends that Ms. McGaughey
demonstrated that she had some awareness of the complaint
concerning Mr. Block's comments because she heard and laughed in
response to his later statements such as "I cannot make comments
about fried chicken or I might be reported again".

Plaintiff was purportedly terminated for insubordination in
response to a reprimand for discussing Service King's upcoming
acquisition of Sterling.  Defendant submits that Sterling
employees were instructed to avoid discussing the acquisition
with "outsiders and the media".  Plaintiff asserts that she was
never instructed to avoid mentioning the acquisition to other
Sterling employees and Sterling assumes the truth of that
statement for the purpose of summary judgment.

In May, 2014, Ms. McGaughey overheard plaintiff discussing
the acquisition on the phone, concluded that she was violating
the order to avoid discussing it and told her to hang up and
started yelling at her.  Defendant contends that plaintiff
responded by 1) calling Ms. McGaughey "woman", 2) telling her
she was not her mother, 3) saying she was not her child and
4) advising Ms. McGaughey that she needed to show plaintiff some
respect.  Plaintiff denies the first two allegations but admits
to advising Ms. McGaughey that she should be treated
respectfully.  Ms. McGaughey reported the interaction to HR.

Plaintiff told Mr. Block, Ms. McGaughey's supervisor, about the incident and he told her that it was not a cause for concern.

Defendant states that Ms. Varn and Mr. Nuxoll discussed the incident and concluded that plaintiff had been insubordinate and thereby violated Sterling's Code of Conduct. In its version of events, because of the insubordination along with the fact that Sterling was in the process of winding down, they recommended to Tony Giannola, the Vice President of Finance, that plaintiff be terminated. He agreed and plaintiff's employment was subsequently terminated.

In plaintiff's view of the facts, defendant fired her for discriminatory and retaliatory reasons. She submits that she never received any warnings, she performed her job well and she was not insubordinate. She points out that Mr. Block, the source of the offensive comments, signed her termination form and that the form included a statement that she was fired for insubordination but that Mr. Block and Ms. Varn told her at her termination meeting that she was terminated because the company was winding down. According to plaintiff, due to the loss of her job, she developed anxiety, sleep issues and was unable to provide food and health insurance for her child.

On June 3, 2014, the sale of Sterling to Service King was consummated and Sterling's Massachusetts facility was completely shut down by July 31, 2014. All Sterling employees were laid

off with the exception of a few high level employees who Service King offered jobs. Plaintiff found another job on October 23, 2014 at which she was paid more than she earned at Sterling.

### F. Procedural Background

In March, 2015, plaintiff filed a complaint in Middlesex Superior Court alleging violations of Massachusetts General Laws, Chapter 151B. Defendant removed the case to this Court on the basis of diversity of citizenship in June, 2015 and timely answered the complaint thereafter.

In May, 2016, with leave of this Court, plaintiff filed an amended complaint alleging that defendant 1) discriminated against her on the basis of her race, 2) harassed her on the basis of her race and 3) retaliated against her when she reported the discrimination and harassment, all in violation of Chapter 151B.[1] Defendant timely answered the amended complaint, denying all substantive allegations.

In November, 2016, defendant moved for summary judgment on all claims against it. That motion, which plaintiff opposes, is the subject of this memorandum and order.

---

[1] The amended complaint states that defendant violated Chapter 151B by discriminating against and harassing plaintiff based on her national origin, race, color and ethnicity. Because 1) plaintiff testified at her deposition that her claims simply involve race and 2) both parties refer to the comments at issue as "racially" offensive, the Court will treat the claims as only involving race.

**II.** **Motion for Summary Judgment**

    **A. Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

If the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. <u>O'Connor</u> v. <u>Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no

-10-

genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

### B. Discrimination Claim

#### 1. Law

In the absence of direct evidence of discrimination, the Court applies the well-established McDonnell Douglas burden-shifting framework to evaluate an employment discrimination claim. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003). The burden shifting framework was originally applied in the Title VII context but it is also used to examine allegations of discrimination in violation of Chapter 151B. Benoit, 331 F.3d at 173.

The framework first requires a plaintiff to establish a prima facie case of racial discrimination by demonstrating that 1) she belonged to a protected class (a racial minority), 2) she was performing her job at an acceptable level and 3) she suffered an adverse employment action, such as termination. Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 32–33 (Mass. 2016). If the plaintiff is successful, the burden of production shifts to her employer to "rebut the . . . prima facie case by articulating a legitimate, nondiscriminatory reason" for the employment decision. Id. at 33 (quoting Blare v. Husky Injection Molding Sys. Boston, Inc., 646 N.E.2d 111, 115 (Mass. 1995)).

If the employer offers such a reason, the burden shifts back to the plaintiff to prove that her employer's justification is mere pretext rather than "the real reason[] for that action." Id. (quoting Wheelock College v. Massachusetts Comm'n Against Discrimination, 355 N.E.2d 309, 315 (Mass. 1976)).

## 2. Application

Defendant assumes that plaintiff has established a prima facie case of discrimination for the purpose of summary judgment but asserts that her claim fails at the third step of the McDonnell Douglas test because she has not shown that the reasons given for her firing, insubordination and the imminent closure of Sterling's Massachusetts office, were pretextual. Plaintiff responds that she has provided circumstantial evidence of pretext.

At this stage of the proceedings, plaintiff has produced sufficient circumstantial evidence to create a genuine issue of material fact with respect to whether the reasons given for terminating her employment were pretextual. Massachusetts is a "pretext only" jurisdiction meaning that

> To survive a motion for summary judgment, the plaintiff
> need only present evidence from which a reasonable jury
> could infer that "the respondent's facially proper reasons
> given for its action against [her] were not the real
> reasons for that action."

Bulwer, 46 N.E.3d at 33 (quoting Wheelock College, 355 N.E.2d at 315). That is to say, under the Massachusetts regime, a

-12-

plaintiff is not required to demonstrate that the reasons given
for the termination were pretextual <u>and</u> the termination occurred
because of a discriminatory animus. <u>Id.</u> at 33-34.  Instead, a
plaintiff is required to show only that the facially legitimate
rationale for the termination is not the real reason for the
employment decision. <u>Id.</u>  Then, at trial, the jury may infer
that the <u>prima facie</u> case along with the pretext suffices to
show discrimination. <u>Id.</u>

    Plaintiff has offered evidence that, when considered in
light of all reasonable inferences drawn in her favor, could
support a conclusion that the stated reasons for terminating her
employment were pretextual.  First, Mr. Block, the primary
source of the racially offensive comments, signed off on her
termination and was present at her termination meeting.

> Statements by supervisors carrying the inference that the
> supervisor harbored animus against protected classes of
> people or conduct are clearly probative of pretext[.]

<u>Hodgens</u> v. <u>Gen. Dynamics Corp.</u>, 144 F.3d 151, 171 (1st Cir.
1998).  Mr. Block's comments coupled with his involvement in the
termination process could lead a reasonable jury to infer that
the reasons given for firing plaintiff were pretextual.
Similarly, the comments regarding Kool-Aid from plaintiff's co-
worker, Mr. Fiske, are not dispositive proof of discrimination
but constitute "evidence of a discriminatory atmosphere" that
"add 'color' to the employer's decisionmaking processes . . . ."

-13-

Conway v. Electro Switch Corp., 825 F.2d 593, 597 (1st Cir. 1987).

Moreover, it is undisputed that at her review, plaintiff's performance was rated "successful" and that she was able to do "her job duties well throughout the course of her employment". Such evidence may support an inference that defendant's given reasons for her termination are pretextual. See Bulwer, 46 N.E.3d at 35. Finally, taking all reasonable inferences in plaintiff's favor, a jury could find that the reasons proffered for her termination are implausible given that 1) the person her supervisor reported to, Mr. Block, told her not to worry about the supposedly insubordinate incident and 2) she was purportedly fired because the company was winding down but there is no indication that other employees were laid off at the same time. Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 662–63 (1st Cir. 2010).

In short, whether discriminatory animus motivated an employment decision is a question of fact and thus "summary judgment remains a disfavored remedy in the context of discrimination cases based on disparate treatment." Bulwer, 46 N.E.3d at 39 (internal quotations omitted). Because, when considering all reasonable inferences in plaintiff's favor, a jury could conclude that the reasons given for firing her were

pretextual, defendant's motion for summary judgment on her
discrimination claim will be denied.

### C. Harassment Claim

#### 1. Legal Standard

Under Massachusetts law, harassment rises to the level of a
hostile work environment if a workplace is "pervaded by
harassment and abuse" such that it makes it difficult for a
person to wholly participate in it. Thompson v. Coca-Cola Co.,
522 F.3d 168, 180 (1st Cir. 2008) (quoting Cuddyer v. Stop &
Shop Supermarket Co., 750 N.E.2d 928, 937 (Mass. 2001)).  To
determine whether there is a hostile work environment, a court
considers the totality of the circumstances, examining factors
such as the

> frequency of the discriminatory conduct; its severity;
> whether it is physically threatening or humiliating, or a
> mere offensive utterance; and whether it unreasonably
> interferes with an employee's work performance.

Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787–
88 (1998)).

An interaction that may not suffice to show a hostile work
environment individually could constitute a hostile work
environment as one of many harassing acts that like "pinpricks
... slowly add up to a wound." Clifton v. Massachusetts Bay
Transp. Auth., 839 N.E.2d 314, 318, n.5 (Mass. 2005) (quoting
Keeler v. Putnam Fiduciary Trust Co., 238 F.3d 5, 12 (1st Cir.

2001)).  On the other hand "simple teasing, offhand comments,
and isolated incidents" are generally insufficient to rise to
the level of a hostile work environment. <u>Kosereis</u> v. <u>Rhode
Island</u>, 331 F.3d 207, 216–17 (1st Cir. 2003) (quoting <u>Faragher</u>,
524 U.S. at 788).  The fact-specific nature of the analysis
often renders the determination of whether there was hostile
work environment best suited for a jury. <u>Pomales</u> v. <u>Celulares
Telefonica, Inc.</u>, 447 F.3d 79, 83 (1st Cir. 2006).

Similarly to Title VII, Chapter 151B renders an employer
vicariously liable for a hostile work environment caused by a
supervisor. <u>Noviello</u> v. <u>City of Boston</u>, 398 F.3d 76, 94–95 (1st
Cir. 2005).  In contrast to Title VII, and consistent with the
legislative directive that it be construed liberally, Chapter
151B does not offer an affirmative offense to employers. <u>Id.</u>
Instead, under Massachusetts law, employers are held strictly
liable if a supervisor harasses an employee. <u>Id.</u>

### 2. Application

Defendant contends that the Court should grant summary
judgment on plaintiff's harassment claim because the racially
charged comments do not rise to the level of a hostile work
environment and are merely "a few comments" about fried chicken,
Kool-Aid and Macy Gray.  Plaintiff responds that she has
established that there was harassment and supports this claim by
outlining Mr. Block's recurring comments.  Plaintiff also notes

-16-

that "there is strict liability under Chapter 151B and Title VII for harassment committed by managers and supervisors".

The Court agrees with plaintiff that summary judgment on the harassment claim is unwarranted. Examining Mr. Block's comments before plaintiff complained to HR, a genuine issue of material fact persists with respect to how often those comments occurred. The parties agree that the Martin Luther King and hot sauce comments only happened once and that the Macy Gray comments happened on multiple occasions. They disagree, however, on the frequency of the fried chicken and Kool-Aid comments. Defendant states that those comments only happened one time, while plaintiff states that they happened at least once a week in January and February 2014. If the factual dispute is resolved in favor of plaintiff, the derogatory comments occurred at least once a week for approximately 8 weeks. The number of times the comments were made is a key consideration with respect to whether the comments were "simple teasing, offhand comments, and isolated incidents", Kosereis, 331 F.3d at 216–17, or "pinpricks [that] only slowly [create a hostile work environment]." Clifton, 839 N.E.2d at 318, n.5 (quoting Keeler, 238 F.3d at 12). Thus, because a genuine issue of material fact remains with respect to the frequency of the comments, the Court will deny defendant's motion for summary judgment on plaintiff's harassment claim.

-17-

## D. Retaliation Claim

### 1. Legal Standard

Claims for retaliation based upon circumstantial evidence under Chapter 151B are also analyzed with the McDonnell Douglas burden-shifting framework requiring a prima facie case of retaliation, articulation of a non-discriminatory justification and ultimately proof by the plaintiff that the given reason is a pretext. See, e.g., Pina v. Children's Place, 740 F.3d 785, 800–01 (1st Cir. 2014). In the context of retaliation, the prima facie burden requires a plaintiff to produce evidence that 1) she reasonably believed discrimination was occurring in violation of Chapter 151B, 2) she acted reasonably based upon that belief and 3) the "desire to retaliate against [her] was a determinative factor in [the] decision to terminate [her] employment." Abramian v. President & Fellows of Harvard Coll., 731 N.E.2d 1075, 1088 (Mass. 2000). Because Massachusetts incorporates federal anti-discrimination case law when construing Chapter 151B, this Court will do the same. Noviello, 398 F.3d at 91.

### 2. Application

Defendant maintains that summary judgment should be entered on plaintiff's retaliation claim because, even assuming that plaintiff has established a prima facie case of retaliation for the purpose of summary judgment, she has no evidence showing

that Sterling's stated reasons for ending her employment were pretextual and has failed to show that the protected activity caused her termination. Plaintiff contends that the brief interval between the complaint and the termination of her employment supports a finding that the reasons given for the separation were pretextual and helps establish causation.

As addressed above, there is a variety of evidence that could support the conclusion that defendant's stated reasons for firing plaintiff are pretextual. To add to those reasons, the fact that Ms. McGaughey allegedly said that plaintiff was lucky her performance review occurred before the complaint could support the inference that Ms. McGaughey suggested she be fired because of the complaint rather than because of her supposed insubordination.

Defendant's claim that plaintiff failed to show but-for causation is also unpersuasive. Causation can be shown by the chronology of events combined with other evidence that tends to show the protected activity was the reason that an individual was fired. Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 221 (1st Cir. 2016). Here, the chronology of events supports an inference of causation. Plaintiff reported the conduct in February or March, 2014 and was terminated only two or three months later, in May, 2014. The Court need not rely on the timing of events alone, however. Ms. McGaughey's comment that

she would have given plaintiff a bad review had the review occurred after the complaint paired with the fact that Ms. McGaughey reported the alleged insubordination is also evidence that could support an inference of causation.  See id.

In sum, construing the facts in plaintiff's favor, a jury could conclude that the reasons given for her firing are pretextual and that her complaint to HR was the but-for cause of her termination.  Therefore, defendant's motion for summary judgment on plaintiff's retaliation claim will be denied.

### E. Damages

Defendant contends that the Court should limit plaintiff's lost wages claim to either the period before July 31, 2014, when Sterling shut down its office in Natick, Massachusetts and all rank and file employees were laid off, or the period before October 23, 2014, when plaintiff was hired by another employer by whom she was paid more than she was paid at Sterling. Plaintiff does not respond to that contention.

Defendant's argument that plaintiff's claim for lost wages should be limited to the period before October 23, 2014 is well taken.  Front-pay damages "should not generate a windfall for the plaintiff" nor should they make a plaintiff "more than whole." Haddad v. Wal-Mart Stores, Inc., 914 N.E.2d 59, 69 (Mass. 2009); Kelley v. Airborne Freight Corp., 140 F.3d 335, 354 (1st Cir. 1998).

On the other hand, it is unclear whether the record supports a ruling that lost wages should be limited to the period before July 31, 2014. Although the rank and file employees at Sterling's office in Natick were all laid off at that time, it is possible that being terminated earlier than other employees and for purportedly insubordinate behavior made it more difficult for plaintiff to find a new job. Therefore, the Court will allow defendant's motion for summary judgment with respect to damages by limiting lost wages to the period before October 23, 2014 but it will deny the motion insofar as it limits lost wages to the period before July 23, 2014.

### ORDER

In accordance with the foregoing, defendant's motion for summary judgment is, with respect to the request that plaintiff's damages for lost wages be limited to the period before October 23, 2014, **ALLOWED** but is otherwise **DENIED.**


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 17, 2017